Eric E. SMITH, Plaintiff-Appellant,

v.

AMERICAN PRESIDENT LINES, LTD. and Marine Engineers' Beneficial Association, AFL–CIO, Defendants-Appellees.

No. 51, Docket 77–7182.

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1977.

Decided Jan. 26, 1978.

William D. Wells, New York City (Nathaniel R. Jones, New York City, on brief), for plaintiff-appellant.

Robert J. Hickey, New York City (Kirlin, Campbell & Keating, New York City, James J. Higgins, Vincent J. Lynch, New York City, of counsel), for defendant-appellee American President Lines, Ltd.

Joel C. Glanstein, New York City (Markowitz & Glanstein, New York City), for defendant-appellee Marine Engineers' Beneficial Association, AFL–CIO.

Before FRIENDLY, SMITH and MULLIGAN, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Hon. Charles M. Metzner, Judge, dismissing for lack of subject matter jurisdiction an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), in which · appellant Eric E. Smith alleged that appellees American President Lines, Ltd. (APL) and Marine Engineers' Beneficial Association, AFL–CIO (MEBA) discriminated against him on account of his race.

The appellant, a member of the MEBA, was employed on June 8, 1970 as a Second Assistant Engineer on a voyage of the vessel, the S.S. President Pierce, which was owned and operated by APL. Appellant was discharged at the end of the voyage on October 5, 1970. Smith, a black seaman, claims that during the voyage he was harassed and abused because of his race and color and that his discharge was racially motivated. APL claims that he was fired for his lack of ability. On October 6, 1970 APL filed a complaint with the United States Coast Guard charging Smith with incompetence as well as misconduct and disobedience during the voyage. On October 14, 1970 appellant filed a charge of

racial discrimination with the New York State Division of Human Rights (NYSDHR) against APL but did not name MEBA as a defendant. On September 17, 1971, after a hearing which consumed some 7 days, NYSDHR found that while APL and one of its employees had denied Smith "equal terms, conditions and privileges of employment" because of his color or race, his discharge was not racially prompted and that APL had committed no unlawful discriminatory practice by discharging him. On September 30, 1971 Smith appealed to the State Human Rights Appeal Board. That appeal was later abandoned and on December 4, 1972 he was advised by NYSDHR, that short of an application for judicial review, his rights had been exhausted under state law.

On September 2, 1971 the Coast Guard dismissed APL's charges against Smith. On November 19, 1971 Smith filed two charges of employment discrimination with the United States Equal Employment Opportunity Commission (EEOC). The first alleged that APL had discriminated against him because of his race by denying him equal terms and conditions of employment and by discharging him; the second charged that MEBA had failed to represent him in grievance proceedings in connection with his discharge. Smith filed a third amended charge on November 24, 1972 which named only APL and officers of the S.S. President Pierce. In it Smith alleged that although he had been discharged on the stated ground of incompetence appellant believed he had been discriminated against due to his race.

On May 23, 1974 the EEOC, through its Acting District Director made a determination that there was reasonable cause to believe that APL and MEBA, as alleged by Smith, had violated Title VII. The parties were invited to join the Commission in a collective effort toward a just reconciliation of the matter. On February 25, 1975 EEOC advised all parties that conciliation efforts had failed and on May 6, 1975 advised Smith of his right to sue in the district court.

On May 28, 1975 Smith commenced this action against APL and MEBA by filing a complaint in the United States District Court for the Southern District of New York asserting jurisdiction under Title VII. On August 20, 1976 APL filed a motion to dismiss or in the alternative for summary judgment contending that the court had no jurisdiction since the charges had been filed with the EEOC after expiration of the statutory time period set forth in 42 U.S.C. § 2000e–5(e). Judge Metzner initially denied the motion on December 13, 1976. However, on reconsideration on January 21, 1977 he found that the plaintiff's charge was filed in excess of 300 days after his termination and thus, did not satisfy the time limits in 42 U.S.C. § 2000e–5(e). It is from this judgment that Smith appeals.[1]

## I. TIMELINESS OF FILING

### A. MEBA

The sole issue presented on this appeal is whether the appellant's Title VII claims against APL and MEBA are time barred under 42 U.S.C. § 2000e–5(e), which in relevant part is set forth in the margin.[2]

1. The plaintiff's complaint also alleged violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Labor Relations Management Act, 29 U.S.C. § 151, et seq. APL's motion to dismiss was directed at all these causes of action. However, the disposition of the district court as to these causes is not before us, no appeal having been taken from their dismissal. Following the granting of APL's motion, MEBA entered into a stipulation with Smith and APL, which was subsequently marked "so ordered" by the district court, in which it was agreed that APL's motion to dismiss the appellant's Title VII cause of action also applied to MEBA

with the same force and effect as if a determination on a separate motion to dismiss by that defendant had been made. That stipulation further specified that charges based upon 29 U.S.C. § 151, et seq. were withdrawn and dismissed.

2. 42 U.S.C. § 2000e–5(e), provides in relevant part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . ., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially

Smith filed his charge against MEBA on the 19th of November, 1971, alleging that Mr. Costello, the Union Patrolman assigned to cover the S.S. President Pierce, had advised him on October 6, 1970 to withdraw his charges against APL and the ship officers since it would be a question of his word "against theirs." His charge fixed September 18, 1970 as the "most recent date on which this discrimination took place."

■ We are mindful that we must construe the procedural requirements of Title VII with liberality in view of its beneficial purposes in exposing unlawful discrimination. See *Love v. Pullman*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). We further note that EEOC charges are normally made by those untutored in the niceties of pleading. See, e. g., *Egelston v. State University College at Geneseo*, 535 F.2d 752, 754–55 (2d Cir. 1976). However, in this case the face of the charge reveals that the latest date on which MEBA allegedly failed to investigate and process the grievance of Smith was on October 6, 1970. Under § 2000e–5(e), Smith's charge to the EEOC had to be filed within 180 days after October 6, 1970 and thus the November 19, 1971 filing was untimely. Since the filing of a timely EEOC charge is a necessary prerequisite to a Title VII action in the district court, e. g., *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 555 n.4, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the complaint as to MEBA was properly dismissed.

Appellant urges, however, that the refusal of MEBA to process the grievance and to represent Smith in his attempt to seek redress were links in a chain of continuous discriminatory conduct by MEBA which persisted until December 10, 1971 when counsel for MEBA declined by letter to represent Smith on his appeal to the Appeal Board from the NYSDHR dismissal of his charge against APL. Indeed, the EEOC determination stated:

> The record shows the Charging Party made a constructive effort to seek the assistance of Respondent Labor Organization until December 10, 1971. On that date, Respondent Labor Organization's counsel informed Charging Party that his case was without merit and declined to act on his behalf.

■ There is authority in this circuit for the proposition that a plaintiff may defeat a time bar to a Title VII civil suit by asserting subsequent identifiable acts of discrimination related to a time barred incident.[3] *Egelston v. State University College at Geneseo, supra*, at 755; *Noble v. University of Rochester*, 535 F.2d 756, 757–58 (2d Cir. 1976); *Weise v. Syracuse University*, 522 F.2d 397, 410 n.20 (2d Cir. 1975).[4] This precedent is not apposite, however, to appellant's position here. In the cases relied upon by appellant the charging party either had filed an amended or second charge with the EEOC which was timely as to subsequent discriminatory conduct by the defendant, or had filed an initial charge within the time frame of § 2000e–5(e) as to certain enumerated acts within an alleged discriminatory pattern.[5] These cases,

instituted proceedings with a State or local agency . . . ., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, . . . . .

3. Other circuits have also acknowledged that a plaintiff may defeat a time bar to a Title VII civil suit by asserting subsequent identifiable acts of discrimination related to an incident which if taken alone, would be time barred. See, e.''g., *Pacific Maritime Association v.*

*Quinn*, 491 F.2d 1294 (9th Cir. 1974); *Macklin v. Spector Freight Systems, Inc.*, 156 U.S.App. D.C. 69, 478 F.2d 979 (1973); *Belt v. Johnson Motor Lines, Inc.*, 458 F.2d 443 (5th Cir. 1972).

4. But cf. *United Air Lines v. Evans, supra*, (mere present discriminatory impact of a past violation insufficient to constitute a continuing violation); *Cates v. Trans World Airlines, Inc.*, 561 F.2d 1064 (2d Cir. 1977) (same).

5. In *Egelston v. State University College at Geneseo, supra*, the plaintiff had been notified on May 15, 1972 that her teaching contract would not be extended when it expired in June, 1973. The district court found that a January,

therefore, demonstrate that if initially Smith had either set forth in his charge to the EEOC events which indicated that MEBA's refusal to investigate and process his grievance on October 6, 1970 was part of a continuing pattern of identifiable discriminatory conduct, or if he had filed an amended or second charge with respect to the Union's failure to represent him in separate proceedings against APL,[6] there would be no question of timeliness.

1973 EEOC filing was untimely under § 2000e–5(e) because defendant's discriminatory act had occurred upon notification of termination. This court reversed, holding the filing timely both in view of plaintiff's allegation that she continued to work for defendant at a discriminatory salary rate until June, 1973 and because the discriminatory termination was found "consummated" in June, 1973. Alternatively, the court noted, the filing was timely due to plaintiff's further allegation that she had been victimized until June, 1973 by defendant's continuous policy of discrimination against women.

In *Noble v. University of Rochester, supra,* this court found timely a March, 1975 filing with the EEOC although an allegedly less qualified male had nominally taken over plaintiff's supervisory position in January, 1974. The court relied on the fact that plaintiff remained employed by defendant at a discriminatory salary until after the filing of charges with the EEOC and plaintiff's demotion was not deemed "consummated" until late 1975 when the male employee actually assumed plaintiff's position. Also, as in *Egelston,* plaintiff alleged that she was still precluded from promotion by defendant's discriminatory policy against job advancement for women.

*Weise v. Syracuse University, supra,* involved two female teachers who were advised by defendant that their employment would terminate in June, 1971. The district court held untimely their charges filed with the EEOC in 1973 on the ground that the Title VII time period ran, at the latest, from the date of termination. But this court reversed, stating that both complainants had alleged specific refusals to rehire or to reconsider termination which occurred within the applicable Title VII time period as to the 1973 filings. Moreover, both plaintiffs had filed either a subsequent or an amended charge with the EEOC in which they alleged these facts that were clearly within the time frame provided by Title VII.

6. Appellant contends that MEBA's failure to investigate and process his grievance should be construed as a continuing violation which made timely his November 19, 1971 filing with the EEOC. Even if we were to find, however, that on October 6, 1970 when MEBA representative Costello told Smith to "forget the whole

However, those are not the facts we face here. Smith's initial charge, as we have indicated, made no reference at all to any event after October 6, 1970 and intimated no subsequent refusals by MEBA to represent him in separate proceedings against APL. Smith did file a second charge on November 24, 1972. It did not, however, name MEBA as a respondent but was limited to allegations against APL and officers of the S.S. President Pierce.[7] We

thing," Smith did not interpret Costello's statement as an outright discriminatory refusal by MEBA to process his grievance, Smith certainly reached this conclusion by November 2, 1970. The record reveals that on that date Smith wrote to MEBA stating: "This missive is solely to inform you that since I got no representation from the Union I am now taking steps to protect my interest *outside* the Union." (Emphasis in original.) If MEBA's allegedly discriminatory refusal to investigate and process Smith's grievance were deemed to have occurred as late as November 2, 1970 the November 19, 1971 filing would still be untimely as to this conduct.

Smith's next approach to the union was sometime in November, 1971 when he advised MEBA that he had brought a racial discrimination matter before NYSDHR and that an appeal was pending. This resulted in MEBA's letter of December 10, 1971 refusing to represent him on the appeal from the Commissioner's adverse decision. Thus, the refusal of December 10 was a separate incident distinct from the union's refusal to represent Smith at grievance procedures against APL and it could have formed the basis for a distinct charge, assuming of course that MEBA's responsibilities to its members included legal representation in state agency proceedings.

7. Smith did eventually file a second charge against MEBA with the EEOC on April 26, 1975, alleging that MEBA was retaliating against him because of his previous charge by denying him his union book. It is significant that he listed as the most recent date of discrimination "4–25–69 & continuing," a qualification not made in his previous charge. This charge was given a separate file number by the EEOC and has not been consolidated with the previous charge. Moreover, it was filed only 32 days prior to commencement of this action. Since the EEOC was not afforded a full opportunity to investigate this charge and since the requisite notice to sue has not been issued with respect to it, the charge was not a proper subject for this action and is not considered by us on this appeal. 42 U.S.C. § 2000e–5(f)(1). *Alexander v. Gardner-Denver Co., supra,* 415

conclude therefore that the Title VII complaint against MEBA was properly dismissed.

B. APL

■ Smith filed with the EEOC two charges of discrimination against APL dated November 19, 1971. The first names APL as the sole respondent and complains of harassment on the S.S. President Pierce voyage which culminated in his discharge. The last date of discrimination is given as October 6, 1970. The second charge names APL, ship's officers and MEBA. It again refers to harassment and discharge but, as we have previously indicated, gives the most recent date of discrimination as September 18, 1970. A third amended charge was filed against APL on November 24, 1972 and is limited to the allegation that Smith's discharge was due not to incompetence but to his race.[8] The last date of discrimination is given as September 17, 1970 and "continuing." Since Smith had instituted proceedings with a state agency against APL, his time to file under

§ 2000e–5(e), see note 2, *supra*, was fixed at 300 days after the alleged unlawful practice occurred.[9] If the October 6, 1970 date of discharge is considered the last date of discrimination, then the November 19, 1971 filing was patently untimely.

Appellant again seeks to avoid this result by arguing that, as indicated in his November, 1972 charge, he was the victim of a continuing course of discrimination. Smith maintains that the filing of charges by APL with the United States Coast Guard on October 6, 1970 constituted another discriminatory step related to his prior harassment and that this discriminatory act by APL did not terminate until September 2, 1971 when the Coast Guard finally dismissed the charges.

■ Assuming that the filing of incompetence charges against Smith did constitute an act of discrimination and further assuming that it was an act so closely connected with his discharge as to constitute a related event within the scope of the EEOC investigation,[10] it does not at all follow that there

U.S. at 47, 94 S.Ct. 1011 (1974) (issuance by EEOC of notice of right to sue is a prerequisite to a Title VII action). Compare *Weise v. Syracuse University, supra,* at 412–13.

Consequently, the additional allegations in Smith's complaint, that MEBA failed to admit him to full union membership on account of his race and that MEBA discriminatorily refrained from referring Smith through its hiring hall, could not be entertained by the district court in any case since they were not made the subject of any EEOC charge regarding which Smith had exhausted his remedy as required by 42 U.S.C. § 2000e–5(e), (f)(1).

**8.** APL maintains, and it is not disputed, that the first two charges were never assigned an EEOC file number and were never served upon appellee. The third charge was assigned a file number but was not served and no notice of it was given APL until March 8, 1973 although 42 U.S.C. § 2000e–5(e) has a ten day notice requirement. It is clear that if Smith were held to have timely filed charges with the EEOC, the omission on the part of that agency to notify defendants would not bar Smith's suit. E. g., *Russell v. American Tobacco Co.,* 528 F.2d 357, 365 (4th Cir. 1975); *Thornton v. East Texas Motor Freight,* 497 F.2d 416, 424 (6th Cir. 1974). We need not further discuss the effect of these failures to comply with the procedural scheme of Title VII since even assuming that

November 19, 1971 was the date of filing, it was in any event untimely.

**9.** § 2000e–5(e) provides that if the act has been the subject of a state or local agency complaint the time period is 300 days "or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier." APL maintains that since the NYSDHR decision was issued on September 17, 1971 and the charge filed on November 19, 1971, it is more than 30 days beyond the state decision and thus is untimely. We must reject this argument since on September 30, 1971 Smith appealed the state agency decision and, hence, the state proceeding had not been finally terminated.

**10.** The scope of the judicial complaint in a Title VII action has generally been construed to be limited not to the words of the charge but to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. E. g., *Equal Employment Opportunity Comm'n v. Bailey Company, Inc.,* 563 F.2d 439, 446 (6th Cir. 1977); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 399 (3d Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741 (1977); *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (5th Cir. 1970).

was a timely filing here. It is undisputed that Smith never mentioned the filing of charges with the Coast Guard as an act of discrimination in any of his charges to the EEOC. That act, in any event, was committed by APL on October 6, 1970. Hearings on the matter were concluded by October 29, 1970. We cannot accept the argument that whatever administrative delays may thereafter have occurred can be charged as acts of continuing discrimination committed by APL, which had discharged Smith more than a year before. The case is distinguishable from *Egelston v. State University College at Geneseo, supra, Noble v. University of Rochester, supra,* and *Weise v. Syracuse University, supra.* In those cases, after notice of discharge or failure to promote, the employee continued on in the service of the defendant at allegedly discriminatory salary rates or was later denied reemployment or promotion by the defendant's discriminatory acts.

In this case the filing of charges with the Coast Guard, like the act of discharge, undoubtedly had a continuing impact upon Smith's ability to secure employment. However, we cannot construe the present adverse *impact* of a past act as a present *violation* of Title VII. See *United Air Lines v. Evans, supra,* 431 U.S. at 558, 97 S.Ct. 1885; *Cates v. Trans World Airlines, Inc.,* 561 F.2d 1064, 1072 (2d Cir. 1977). To do so would effectively nullify the limitation period set forth in the statute.[11]

## II. TOLLING

Appellant argues in the alternative that even if the EEOC charges were not filed within the time limits provided by § 2000e–5(e), equitable considerations compel a tolling of the statutory period. Appellant notes that employers and unions are required by Title VII, 42 U.S.C. § 2000e–10, and by EEOC regulation, 29 C.F.R. § 1601.-27, to post notices providing basic information to employees of their rights under Title VII. Appellant maintains that at no time during his presence on the S.S. President Pierce in 1970 were such notices posted; nor did he "see" such posters during any of his visits to MEBA's offices. He states that he would have utilized EEOC administrative relief in timely fashion had he known of its existence and that his ignorance was due to the defendants' failure to post the required notices. The appellees contend that the time limitations provided by Title VII are jurisdictional and therefore cannot be tolled. In any event, appellees assert, the circumstances relied upon by appellant in this case do not provide any equitable basis for tolling.

This court has expressly declined to resolve the "still open question" of whether the time requirement at issue here is a jurisdictional prerequisite to a suit in the federal court. *Egelston v. State University College at Geneseo, supra,* at 755 n.5. The Supreme Court has referred to Title VII's time limitations as "jurisdictional prerequisites" to suit under the Act. *Alexander v. Gardner-Denver Co., supra,* 415 U.S. at 47, 94 S.Ct. 1011; *McDonnell Douglas v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976) the Court rejected a toll of the time limit which plaintiff had contended would not prejudice the defendant due to the trivial delay involved. Id. at 239–40, 97 S.Ct. 441. The Court stated that in "defining Title VII's jurisdictional prerequisites 'with precision' . . . Congress did not leave to courts the decision as to which delays might or might not be 'slight'." Id. at 240, 97 S.Ct. at 449.

*Electrical Workers,* while denominating the time limitation of Title VII as jurisdictional, nonetheless distinguished the case before it, in which the plaintiffs' late filing resulted from their choice of alternative remedies before EEOC filing from instances of a party being "prevented from asserting" his rights. Id. at 237 n.10, 97 S.Ct. 441. The Court thereby left open the possibility that in certain situations tolling of the Title VII time limits might be ac-

---

11. APL raises several other defenses to Smith's complaint which we need not consider in view of our affirmance on the ground that the EEOC charge was untimely filed.

ceptable. However, the decision in *Electrical Workers* strongly suggests that, even assuming the Title VII time limits are not strictly jurisdictional, the tolling of those limits may be very restricted. The Court implied that tolling might be appropriate only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum.[12] Id. at 237 n.10 & 238, 97 S.Ct. 441. See *Burnett v. N.Y. Central R.R. Co.*, 380 U.S. 424, 429, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). See also *Johnson v. Railway Express Agency*, 421 U.S. 454, 468 n.14, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

The appellant has relied on this appeal on *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir. 1976), aff'd by an equally divided court, —— U.S. ——, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977) and *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975). The Fifth Circuit in *Reeb* found that the Title VII time limit here in issue is not strictly jurisdictional but may be tolled in appropriate circumstances. The Tenth Circuit in *Dartt* came to a similar conclusion regarding an analogous time limitation in the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.*[13] Both courts found tolling appropriate in the situations there encountered.

The affirmance of *Dartt* by an equally divided court, while a conclusive

adjudication and binding upon the parties to that suit, nonetheless prevents the case from becoming an authority for the determination of other cases either in the Supreme Court or lower courts. *Hertz v. Woodman*, 218 U.S. 205, 213–14, 30 S.Ct. 621, 54 L.Ed. 1001 (1910); see *Laird v. Tatum*, 409 U.S. 824, 837–38, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (memorandum of Rehnquist, J.). Therefore, the question of whether the time limitation for Title VII cases is strictly jurisdictional or is in the nature of a statute of limitations subject to tolling is still open in this circuit and remains so. Even assuming that tolling is permissible as suggested in *Electrical Workers* and as held in *Dartt* and *Reeb*, the circumstances relied upon by Smith here fall far short of the equitable considerations which would prompt our interference with the Title VII time limitations provided by the Congress.

Assuming that neither MEBA nor APL posted the statutory notices, it does not follow that this failure prevented Smith from learning of the existence of EEOC or the benefits of its administrative procedures. The facts before us strongly suggest otherwise. He promptly filed a charge of discrimination with the New York State Division of Human Rights on October 14, 1970. Moreover, the record demonstrates that he was represented by counsel in those hearings at least by February 26, 1971, and thus had access to a means of acquiring knowledge of his rights and responsibilities under Title VII well within the 300 day

12. This would be consistent with common law tolling principles. The primary consideration underlying statutes of limitations is that of fairness to the defendant. It is believed that the defendant should not be called upon to defend a suit when "evidence has been lost, memories have faded and witnesses have disappeared." *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). The most common and justifiable of the exceptions to the running of statutes of limitations is based upon affirmative acts of the defendant which have impeded suit. Note, Developments—Statutes of Limitations, 63 Harv.L.Rev. 1178, 1220 (1950) (Developments). The omission claimed here cannot be equated with the usual cases of fraudulent concealment, see Dawson, Fraudulent Conceal-

ment and Statutes of Limitation, 31 Mich.L. Rev. 875 (1933), which ordinarily consist of affirmative misrepresentations or active misconduct on the part of the defendant. Developments, *supra*, at 1121 n.354, citing cases; Anno. 43 A.L.R.3d 429, 446 and cases cited in n.8.

13. *Dartt* concerned the time limitations of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.*, rather than those of Title VII. However, because of the similarities between these pieces of legislation, interpretations of the ADEA's time limitations are very useful in defining the analogous limitations in Title VII. See *Dartt v. Shell Oil Co.*, *supra*, at 1259.

period permitted for EEOC filing. Smith also was represented by counsel as early as October 16, 1970 at the Coast Guard hearings during which he claimed that the circumstances surrounding his discharge were "racially motivated." Hence, assuming *arguendo* that the statutory time period was tolled until Smith had access to counsel and thus to a means of discovering basic information concerning Title VII, the statutory time period still elapsed between the date on which Smith was first represented by counsel in the Coast Guard proceeding and that on which he filed charges with the EEOC. See *Charlier v. S. C. Johnson & Son, Inc.*, 556 F.2d 761, 765 (5th Cir. 1977); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n.8 (5th Cir. 1975).

It is undisputed that the defendants in this case were not apprised of their alleged failure to post notices until August 27, 1976 when Smith filed an affidavit in support of a memorandum in opposition to APL's motion to dismiss the complaint. In his affidavit Smith attested that at no time during his 1970 voyage on the President Pierce was there posted on the ship any notification of the availability of EEOC relief. He further stated that he had never "seen" such notices posted at the union's office. If the purpose of Title VII time limitations is in part to provide fresh notice to assist a defendant in the preservation of evidence, see e. g., *Dartt v. Shell Oil Co., supra*, at 1261, then Smith's 6 years of silence on this issue militates strongly against it now being utilized as an equitable consideration in his behalf.

Furthermore, the facts in *Dartt* found to justify tolling are distinguishable from those in the instant case. In *Dartt*, although there was an untimely filing of written charges, the discharged employee had notified the agency (Department of Labor) orally of her intent to sue and had maintained repeated contact with the agency. The Department of Labor had advised the employer of the charges and informal conciliation efforts had been undertaken before the agency's receipt of plaintiff's notice of intent to sue. Moreover, the Department of Labor had delayed its usual practice of sending notice to the complainant of the 180 day time limit until the employer supplied certain information it had promised to turn over to the Department. Thus, as the court there found, the employer's failure to supply the information directly contributed to the plaintiff's failure to file. Even more importantly, the plaintiff had notified the appropriate agency of her claim under the ADEA and maintained periodic contact with that agency. Therefore, by the conduct of the Department of Labor itself, the plaintiff was lulled into inaction, secure in the mistaken belief that she had satisfied the statutory requirements. The agency had, in turn, apprised the defendant employer within the statutory time period that the plaintiff was asserting a claim under the ADEA so that in fact the defendant was timely informed of plaintiff's claim against it.

*Reeb* also is of no assistance to the appellant. There the plaintiff, a white female employee, had been laid off previously because of a lack of funds. Consequently, she accepted her employer's explanation that this was the reason for a subsequent refusal to renew her contract. Six months later she learned that her job had been quickly filled by an allegedly less competent male. The circuit court found that her employer had actively misled her as to the reason for her discharge, thereby concealing its discriminatory act.[14]

Here, of course, it is uncontested that Smith was convinced that his discharge was discriminatory from the outset. He properly filed his charge with the state agency but not with the EEOC. The appellant here did

---

14. We do not overlook appellant's reliance on *Charlier v. S. C. Johnson & Johnson, Inc., supra*, which directed a remand to determine whether one of two discharged employees had access to notices advising employees of the ADEA's provisions which were posted in the regional office of their employer. Although there is broad language in that case indicating that tolling may be appropriate where no notice has been posted, there is no suggestion in *Charlier* that the employees were dilatory in bringing this factor to the attention of the agency or the court. In addition, one of the plaintiffs had been explicitly misinformed by an employee of the Department of Labor that there was no time limit within which his claim

not, as in *Dartt,* give notice to the appropriate federal agency of his claim under Title VII. He was not lulled into a false sense of security, as was the plaintiff in *Dartt,* by the government's timely advisement to defendants of the claim against them and the agency's informal initiation of conciliation efforts with the employer. In contrast to *Reeb,* the appellees in this case did not engage in a deceptive charade calculated to conceal the very existence of a cause of action from the appellant. Smith's claim that he had no knowledge of the EEOC because of appellees' failure to post notices, a claim not made, as we have indicated, until 6 years after the event, does not in our view allege misleading, fraudulent or deceptive conduct by the appellees sufficient to permit tolling here. Nor are there other unusual circumstances present in this case which would lead us to invoke a toll of the time limitations imposed by Congress.

For these reasons the judgment of the district court is affirmed.

should be named; this plaintiff then advised the co-plaintiff of his ADEA rights. Finally, the court in *Charlier* stated that tolling would nevertheless be inappropriate after plaintiffs had retained counsel and thereby secured a means of ascertaining the relevant provisions of the ADEA. Id. at 765; accord, *Edwards v. Kaiser Aluminum & Chemical Sales, Inc., supra,* at 1200 n.8. As noted in the text, the

record demonstrates that Smith was represented by counsel in hearings respecting his discharge held before two separate bodies, the Coast Guard and the NYSDHR. Smith's consultation with counsel as to the Coast Guard proceeding occurred in October, 1970. His filing of charges with the EEOC on November 19, 1971 was well over 300 days beyond that date.