**Madelyn WELTY, Plaintiff,**

v.

**S.F. & G., INC., d/b/a Mercury; Mercury Consolidated, Inc. ["Mercury"], Defendant.**

**No. CV 83–HM–5907–NE.**

United States District Court, N.D. Alabama, Northeastern Division.

April 11, 1985.

---

Gary V. Conchin, Higgs & Conchin, Marcia Stevens, Huntsville, Ala., for plaintiff.

William F. Gardner, William K. Thomas, Cabaniss, Hohnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for defendant.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

## I.

## INTRODUCTION

This is a discharge case involving two claims, one filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the other under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). The claims allege that defendant S.F. & G., Inc., d/b/a Mercury; d/b/a Mercury Consolidated, Inc. terminated plaintiff's employment because of her sex and age. The correct name of defendant in this litigation is Mercury Consolidated, Inc. ("Mercury"). The case is before the Court on Mercury's submitted motion for summary judgment based on the plaintiff's failure to comply with the statutory requirement of filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged unlawful employment practice.

## II.

## UNDISPUTED FACTS

The following facts relevant to the motion for summary judgment are undisputed:

## A. PLAINTIFF'S EMPLOYMENT WITH MERCURY:

1. Mercury Consolidated, Inc. is a contractor at the Marshall Space Flight Center in Huntsville, Alabama. It was formerly known as S.F. & G., Inc. d/b/a Mercury. Mercury's contract with the National Aeronautics and Space Administration is for base operations and maintenance. The contract includes building and grounds maintenance at the Center, some construction work, the supply system, and the taxi transportation service. There are normally approximately 400 people employed by Mercury under the contract. (Plaintiff's depositions, at 50–51).

2. Plaintiff was employed by Mercury as Administrative Manager on March 1, 1981. (Plaintiff's deposition, at 46–47). As Administrative Manager, plaintiff was responsible for personnel matters with the exception of labor relations, for the accounting function (Plaintiff's deposition, at 55), for insuring that requirements of the government contract were met, for negotiating contract changes with the government, and for the security function. (Plaintiff's deposition, at 60). Plaintiff reported directly to Project Manager John Hill.

## B. TERMINATION OF PLAINTIFF'S EMPLOYMENT.

3. According to the plaintiff's testimony, approximately $1,000,000 in government payments was lost shortly before her discharge. Prior to issuing replacement checks, the government required that Mer-

cury attempt to track down the lost payments (Plaintiff's deposition, at 70–71). The delay in receiving these substantial payments "caused a lot of financial problems." To meet the financial difficulties, plaintiff went through the accounts payable and set aside for later payment Mercury debts which she concluded "could be set aside and not paid immediately." (Plaintiff's deposition, at 71).

4. Among the bills which plaintiff set aside were statements from the Company's group insurance carrier. *Id.* This carrier provided health insurance coverage for approximately 200 Mercury employees. (Plaintiff's deposition, at 178). When Project Manager Hill learned that the Company had two unpaid bills from the insurance carrier and that the Company had "received a letter from the insurance company saying that if we didn't pay our insurance premium by a certain date, our employees' group insurance would be terminated" (Plaintiff's deposition, at 72), he requested that plaintiff get a list of all the vendors whose bills were put to the side.

5. When Mr. Hill saw the list, plaintiff was informed of her termination. Ms. Welty described her discharge in the following terms:

> He took one look at it and said he was terminating me, that that was unacceptable. He didn't like surprises. He was upset that I coordinated it with the corporate office instead of with him and that he felt that I was on their team and not on his team, and I was through. That was the extent of it.

(Plaintiff's deposition, at 72–73).

6. The meeting at which plaintiff was informed of her termination took place on approximately November 3, 1982. The deposition testimony relevant to the date of this meeting is as follows:

Q When were you informed that you were going to be discharged?

A It was the first week in November.

\* \* \* \* \* \*

Q But you said, I believe, that you were told you were going to be discharged back in November?

A That's right. It was approximately the 3rd of November.

\* \* \* \* \* \*

Q You're certain that it was during at least the first week of the first few days of November; is that correct?

A Yes.

(Plaintiff's deposition, at 67–68).

Q ... It was November the 3rd, 1982, that you were informed your employment was being terminated.

A It was approximately. It might have been the 2nd or the 4th, but it was in that area to where 30 days would be December 3rd.

(Plaintiff's deposition, at 174–75).[1]

7. At the time plaintiff was informed that she "was through" and was being discharged, she was requested to work for 30 days to accomplish certain specific tasks, including the training of another employee who would be taking over some of her responsibilities:

Q And I'd just like you to tell me what was said during that meeting in his office.

A ... He said that he felt that I was on the corporate team, not his team, which he is a corporate officer, and he felt that we just couldn't work together. And it was due to a specific incident, but he told me that he would discharge me, and he wanted me to work for 30 days. And I would be discharged effective 30 days from the meeting in his office.

\* \* \* \* \* \*

We had some discussion of the incident that he said the termination was based on. He told me during the 30 days he had specific things he wanted me to accomplish, to get done. And he told me that he wanted me to teach Jerry Stewart what I did because he

---

1. Inasmuch as plaintiff testified the notice was given on either the 2nd, 3rd, or 4th, and since the plaintiff's charge would be untimely under any of those dates, the notice will be referred to as having been given on the 3rd.

would be taking over some of my functions.

(Plaintiff's deposition at 69–70). Ms. Welty was told that during the 30-day period she "would be fairly flexible in being able to get time off to look for a job or whatever [she] needed to do." (Plaintiff's deposition, at 147).

8. There is no question but that plaintiff understood on November 3, 1982, that her employment was being terminated:

Q So you understood, as of that meeting when you talked about the insurance and other vendors that occurred on or about November the 3rd, 1982, that your employment was being terminated?

A That's right.

(Plaintiff's deposition, at 73). Not only did Ms. Welty understand that her employment was being terminated, but the employees who worked under her, and the government personnel with whom she worked, knew that she had been discharged. For this reason, Ms. Welty decided, after only two weeks of the 30 days, that she preferred to "go ahead and terminate":

After I had been there two weeks, I told Jerry that I would like to just go ahead and terminate, and I meant without pay, just terminate at the end of the two weeks because it was hard for me to do any kind of a job there. The people that worked for me all knew that I had been terminated. The people I dealt with NASA all knew I had been terminated, and it was hard to do an effective job under those circumstances.

(Plaintiff's deposition, at 147).

9. Consistent with her desires, Ms. Welty did not return to work after Saturday, November 20 but was on call at home to answer questions through December 3. She remained on the payroll through December 3. (Plaintiff's deposition, at 148).

10. At the time plaintiff was informed of her discharge on November 3, she believed that she was being discriminated against on the basis of age and sex:

Q Going back to the time that you were informed of your discharge on or about November the 3rd, 1982, I understand it was your belief that you were discharged because of Mr. Hill's feelings about women in management; is that correct?

A That's right.

Q And on the basis of your sex and your age; is that correct?

A That's right.

Q Was it your feeling at that time, November the 3rd when you were informed of your discharge, that you were being discharged for that reason?

A Yes.

(Plaintiff's deposition, at 156–57).

C. PLAINTIFF'S EEOC CHARGE.

11. Prior to filing a charge of discrimination with the EEOC, plaintiff consulted with legal counsel. (Plaintiff's deposition, at 143). Ms. Welty contacted legal counsel on March 2, 1983. (Plaintiff's deposition, at 169). The plaintiff's EEOC charge was signed on May 25, 1983, in her lawyer's office. (Plaintiff's deposition, at 66–67).

12. The plaintiff's charge of discrimination was received by the EEOC on May 31, 1983. (See Exhibit 1 to plaintiff's deposition).

13. The plaintiff's EEOC charge was executed by the plaintiff and received by the EEOC more than 180 days after November 3, the date on which she was informed that she "was through" and was being discharged.

14. Similarly, the plaintiff's EEOC charge was executed by the plaintiff and received by the EEOC more than 180 days after November 20, the date on which plaintiff was last at work at Mercury's offices.

D. PLAINTIFF'S FAMILIARITY AND EXPERIENCE WITH EEO MATTERS.

15. Prior to her employment with Mercury, plaintiff was employed by Bendix Corporation in Huntsville from 1976 until 1980 as Business Manager. (Plaintiff's deposition, at 34, 41).

16. As Bendix Business Manager, Ms. Welty was responsible for personnel, accounting, contracts, security and the typing pool. (Plaintiff's deposition, at 34). In connection with her personnel duties, plaintiff "was responsible for all areas of personnel including labor relations, wage and salary, equal opportunity, and hiring policies and procedures." (Plaintiff's deposition at 35). Ms. Welty participated in contract negotiations with the various labor unions representing the up to 350 Bendix employees (Plaintiff's deposition, at 36), and "was the final step in the grievance procedure before the grievance would be submitted to arbitration" (Plaintiff's deposition, at 37). Ms. Welty's personnel responsibilities with Mercury were essentially the same as they had been with Bendix with the exception that she did not have the labor relations function at Mercury. (Plaintiff's deposition, at 53).

17. In connection with her EEO responsibilities at Bendix, Ms. Welty "wrote the affirmative action plans and implemented and monitored all the affirmative action policies and guidelines." (Plaintiff's deposition, at 37). She did "all the investigation" of EEOC charges and assisted the corporate attorney in handling the charges. (Id). Ms. Welty was familiar with the EEOC through her experience in handling labor relations in EEOC matters. (Plaintiff's deposition, at 143).

### III.

### ANALYSIS

A. THE FILING OF A CHARGE WITHIN 180 DAYS IS A CONDITION PRECEDENT TO SUIT UNDER BOTH TITLE VII AND THE ADEA:

Section 706(e) of Title VII provides in pertinent part that:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ...

42 U.S.C. § 2000e–5(e). Similarly, Section 7(d)(1) of the ADEA provides that:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—(1) within 180 days after the alleged unlawful practice occurred....

29 U.S.C. § 626(d)(1).[2]

The 180-day charge-filing period provided by both the ADEA and Title VII reflects a preference for the administrative resolution of claims and the "Congressional purpose to achieve remediation primarily by conciliation." *Reich v. Dow Badische,* 575 F.2d 363 (2nd Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978). While the requirement that an EEOC charge be timely filed is not jurisdictional in nature, *see Zipes v. Trans World Airlines,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982), the requirement is a condition precedent to the maintenance of an action and the plaintiff bears the burden of demonstrating that the condition precedent has been satisfied:

Our holding does not mean that plaintiffs no longer must prove that they have satisfied the conditions precedent to a Title VII action. To the contrary, a plaintiff must generally allege in his complaint that "all conditions precedent to the institution of the lawsuit have been fulfilled." If the defendant doubts the veracity of the plaintiff's allegation, in whole or in part, then the defendant may deny "specifically and with particularity" that the preconditions have not been fulfilled. The plaintiff then bears the burden of proving that the conditions precedent, which the defendant has specifically joined in issue, have been satisfied....

*Jackson v. Seaboard Coast Line Railroad,* 678 F.2d 992, 1010 (11th Cir.1982). (Citations omitted.)

---

**2.** Effective July 1, 1979, responsibility for enforcement of the ADEA was transferred from the Secretary of Labor to the EEOC pursuant to the President's Reorganization Plan No. 1. Accordingly, references in the Act and in court decisions to the "Secretary" now have reference to the EEOC.

## B. PLAINTIFF'S THEORY THAT THE FILING PERIOD DID NOT BEGIN TO RUN UNTIL HER LAST DAY ON THE PAYROLL IS CONTRARY TO DECISIONS OF THE SUPREME COURT.

■ The plaintiff's EEOC charge was filed on May 31, 1983. Accordingly, the charge was timely only if she was discharged within 180 days prior to May 31, 1983, or on or after December 3, 1982. Because the plaintiff was informed of her discharge on November 3, 1982, *more* than 180 days prior to the filing of her charge, the plaintiff's theory is that the time for filing her charge did not begin to run until December 3, the last day for which she was paid. The argument is contrary to the law and, under settled principles, the time for filing plaintiff's EEOC charge began running on the date she was informed of her termination.

The result in this case is governed by the United States Supreme Court's decisions in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), and *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). In *Ricks*, the plaintiff, having been denied tenure, was informed on June 26, 1974, that he would be offered a one-year terminal contract which would expire on June 30, 1975. The District Court dismissed the plaintiff's Title VII complaint on the grounds that he had not filed a charge within 180 days after June 26, 1974, the date it concluded the filing period began to run. The Court of Appeals reversed, holding that the filing period did not begin running until the terminal contract expired on June 30, 1975.

Rejecting the Court of Appeals' reasoning that "'a terminated employee who is still working should not be required to consult a lawyer or file charges of discrimination against his employer as long as he is still working, even though he has been told of the employer's present intention to terminate him in the future,'" 449 U.S. at 255, 101 S.Ct. at 502, the Supreme Court held that the filing period under Title VII begins to run at "the time of the *discriminatory acts,* not [at] the time at which the *consequences* of the *acts* [become] most pain-ful!" 449 U.S. at 258, 101 S.Ct. at 504 (*quoting Abramson v. University of Hawaii,* 594 F.2d 202, 209 (1979). Accordingly, the Supreme Court agreed with the District Court that the filing period began to run on June 26 and that the plaintiff's charge was untimely.

In *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), plaintiffs were notified prior to June 18, 1977, that their employment would terminate on specified dates on and after June 30, 1977. Their complaint, alleging that their terminations violated 42 U.S.C. § 1983, was filed on June 19, 1978, less than one year after their actual terminations, but more than one year after receiving notice of the terminations. "The District Court dismissed the suit, holding that the action had accrued on the date the employees received the letters. . . ." 454 U.S. at 7, 102 S.Ct. at 28. Agreeing with the District Court, the Supreme Court held that *Ricks* was controlling:

> We think Ricks is indistinguishable. When Ricks was denied tenure, he was given a 1-year "terminal" contract. Thus, in each case, the operative decision was made—and notice given—in advance of a designated date on which employment terminated.
>
> In *Ricks*, we held that the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful. . . .

454 U.S. at 8, 102 S.Ct. at 29. Applying the *Ricks* test, the Supreme Court held that the filing period began to run on the date notice of the termination was given, not the later date on which the actual termination occurred:

> In the cases at bar, respondents were notified, when they received their letters, that a final decision had been made to terminate their appointments. The fact that they were afforded reasonable notice cannot extend the period within which suit must be filed.

454 U.S. at 8, 102 S.Ct. at 29.

Taken together, "*Ricks* and *Chardon* establish that the date of notice of termina-

tion, rather than the final date of employment, is the operative date from which the 180 day filing requirement begins to run." *Elliott v. Group Medical and Surgical Service,* 714 F.2d 556, 563 (5th Cir.1983). The cases following *Ricks* and *Chardon* have consistently held that the filing period begins to run on the date the decision is communicated to the employee, as illustrated by the following:

—In *McWilliams v. Escambia County School Board,* 658 F.2d 326 (5th Cir.1981 Unit B),[3] the former Fifth Circuit held that the plaintiff's Title VII claims were barred because the School Board had communicated to the plaintiff more than 180 days prior to his filing its decision to transfer him:

> In *Ricks,* the Supreme Court held that when the challenged act is an individual employment decision (such as the transfer, demotion and promotions involved in *McWilliams'* case), the alleged discrimination occurs and the 180-day filing period commences to run from the time the employer makes the decision and communicates it or makes it apparent to the complainant.

658 F.2d at 328 n. 1.

—In *EEOC v. Kimberly-Clark Corp.,* 531 F.Supp. 58 (N.D.Ga.1981), plaintiff was notified on February 12, 1973 that he was to retire on April 1. The date was later changed to June 30, at which time plaintiff left his office but remained on the payroll on "special assignment" until September 30. Relying on *Chardon* and *Ricks,* the District Court held that the filing period began to run on February 12, when plaintiff was informed that he was to be terminated and that his EEOC charge was untimely:

> [T]he basis urged for dismissal of the complaint has recently been confirmed by the Supreme Court opinion reversing the First Circuit on the ground that the Court of Appeals' decision was contrary to *Ricks, Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981).... Thus, in the case at bar alleg-

ing unlawful discharge, the statute of limitations commenced when the employee is notified that his job is to be terminated. It is not disputed that such notice was received by plaintiff on February 12, 1973. The statute of limitations therefore expired over six months prior to commencement of the action.

531 F.Supp. at 61.

—In *Bratton v. American National Insurance Co.,* 32 EPD ¶ 33774, 32 FEP 953 (N.D.Ga.1983), the plaintiff was informed on January 28, 1981, that he could resign as the defendant's regional director or be terminated. By letter of February 3, 1981, plaintiff's termination was confirmed with an effective date of March 10, 1981, which was subsequently extended to June 13, 1981. Rejecting plaintiff's argument that the filing period began to run on June 13, the Court granted the defendant's motion for summary judgment:

> Here, it is undisputed that on January 28, 1981, Bratton was notified that his employment was terminated. The "operative decision" was made and notice was given to Bratton on that date, "in advance of a designated date on which employment terminated." "The fact that ... [he was] afforded reasonable notice cannot extend the period ..." to the official date of termination of his employment on June 13, 1981.

32 FEP at 957, *quoting Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981).

—In *Price v. Litton Business Systems,* 694 F.2d 963 (4th Cir.1982), plaintiff was informed on February 5, 1980, that he would be removed as branch manager effective February 8, 1980, but was retained in a sales position until the end of February when he went on a three-month personal leave of absence. Rejecting the plaintiff's argument that the filing period did not begin to run until the end of his leave of absence, the Court held that the relevant date was February 5, 1980, when he was informed of the Company's decision:

*Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir. 1982).

---

**3.** Decisions of the former Fifth Circuit, Unit B, rendered after September 30, 1981 are binding precedent in the Eleventh Circuit. *Stein v.*

In this circumstance, as the Supreme Court made clear in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the filing period runs from the time at which the employee is informed of the allegedly discriminatory employment decision, regardless of when the effects of that decision come to fruition. *Accord Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 78 L.Ed.2d 6 (1981). Therefore, Price's claim did not arise, as he suggests, on May 30 when he finally left the company; rather, the 180-day period began to run on February 5 when he was told he would be relieved of his position and the November filing with the EEOC was thus time-barred.

694 F.2d at 965.

—In *Mogley v. Chicago Title Insurance Co.*, 553 F.Supp. 1045 (E.D.Mo.1983), defendant informed plaintiff on July 27 that he had a choice of early retirement or dismissal. On August 19, plaintiff signed an agreement to take early retirement and on the following January 31, his employment officially ended. Finding that the time period for filing began to run on July 27, the Court granted defendant's motion to dismiss:

> In *Delaware State College v. Ricks;* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), the Supreme Court held that the similar 180 day period of Title VII begins to run when an allegedly discriminatorily motivated decision to terminate an employee is made and communicated to the employee, notwithstanding the employee's continuing work for the employer up to the date of termination. *Id.* at 259, 101 S.Ct. at 503. Thus, when a decision to terminate an employee is made and communicated to the employee in advance of the termination date, the employee, if he believes the decision is the product of discrimination, must file a charge within 180 days of the date on which he learns of the decision. The decision, explained the Court, is the discriminatory conduct, and the termination merely the result of it....

Exhibit two, incorporated into plaintiff's complaint, demonstrates that on July 27, 1981, defendant conveyed to plaintiff its decision to allow plaintiff to choose early retirement or face dismissal. Accordingly, *Ricks* dictates that the 180 day charge-filing period began to run on this day. Plaintiff's charge, filed on February 16, 1982, is thus untimely, and plaintiff's complaint will be dismissed.

553 F.Supp. at 1046–47.

—In *Vuksta v. Bethlehem Steel Corp.*, 540 F.Supp. 1276 (E.D.Pa.1982), *aff'd.* 707 F.2d 1405 (3d Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 121, 78 L.Ed.2d 119 (1983), plaintiff was told on September 30, 1977 that his job was being eliminated in a reduction in force and that he would be released as of October 30. Plaintiff remained on defendant's list of employees until December 11, 1978. The Court concluded that the limitation period began to run on September 30 and that "[t]he fact that plaintiff continued to work for one month thereafter and remained on defendant's list of employees until December 1978 does not stay the commencement of the limitation period." 540 F.Supp. at 1279.

—In *Davis v. C.V. Mosby Co.*, 34 FEP 1092 (W.D.Mo.1983), the plaintiff was informed of his termination on November 1. A week later, the plaintiff received a severance letter advising that he would continue to receive benefits and severance pay equivalent to his salary for 26 weeks. The court held that the plaintiff's complaint was barred since the time for filing an EEOC charge began to run on November 1:

> It is well settled that the 180-day period commences at the time defendant clearly communicates to his employee the decision to discharge him. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 6 L.Ed.2d 431, 24 FEP Cases 827 (1980); *Mogley v. Chicago Title Insurance Co.*, 553 F.Supp. 1045, 30 FEP Cases 134 (E.D.Mo.1983). The facts indicate this communication took place on November 1, 1979.

34 FEP at 1093.

## C. APPLICATION OF THE RICKS/CHARDON RULE TO THE FACTS OF THIS CASE.

■ The principle adopted by the Supreme Court in the *Ricks* and *Chardon*

cases, and subsequently followed without exception by all reported lower court decisions diligent research has found, is that the running of the 180-day time period for filing of an EEOC charge in a discharge case under Title VII or the ADEA is triggered by the employer's notice to the employee of his impending discharge. In the present case, the plaintiff's own testimony establishes that the triggering event occurred on November 3, 1982, with the result that the charge filed more than six months later was untimely:

1. *Notice Was Given On November 3.*—The plaintiff's deposition testimony establishes without doubt that the operative date is November 3, the day on which she was informed of her discharge. The relevant testimony is as follows:

Q When were you informed that you were going to be discharged?

A It was the first week in November.

Q But you said, I believe, that you were told you were going to be discharged back in November?

A That's right. It was approximately the 3rd of November.

\* \* \* \* \* \*

Q You're certain that it was during at least the first week or the first few days of November; is that correct?

A Yes.

(Plaintiff's deposition, at 67–68).

Q ... It was November the 3rd, 1982, that you were informed your employment was being terminated.

A It was approximately. It might have been the 2nd or the 4th, but it was in that area to where 30 days would be December 3rd.

(Plaintiff's deposition, at 174–75).

2. *The Discharge Notice Was Unequivocal.*—There can be no contention that plaintiff did not understand on November 3 that her employment was being terminated because the notice given to her by Project Manager John Hill was clear and unequivocal. As the plaintiff testified in deposition,

He said that he felt that I was on the corporate team, not his team, which he is a corporate officer, and he felt that we just couldn't work together. And it was due to a specific incident, but he told me that he would discharge me, and he wanted me to work for 30 days. And I would be discharged effective 30 days from the meeting in his office.

(Plaintiff's deposition, at 69).

Plaintiff's understanding of the finality of the notice given to her on November 3 is demonstrated by her decision, after only two weeks, not to work out the 30-day period as requested by Project Manager Hill:

After I had been there two weeks, I told Jerry that I would like to just go ahead and terminate, and I meant without pay, just terminate at the end of the two weeks because it was hard for me to do any kind of a job there. The people that worked for me all knew I had been terminated. The people I dealt with with NASA all knew I had been terminated, and it was hard to do an effective job under those circumstances.

(Plaintiff's deposition, at 147).

The unequivocal nature of the notice of discharge conveyed to Ms. Welty on November 3 is further confirmed by the fact that she was told that she could have time off during the next 30 days to "look for a job," (Plaintiff's deposition, at 147), and by the further fact that she was told that she was to train her replacement during the 30-day period:

We had some discussion of the incident that he said the termination was based on. He told me during the 30 days he had specific things he wanted me to accomplish, to get done. And he told me that he wanted me to teach Jerry Stewart what I did because he would be taking over some of my functions.

(Plaintiff's deposition, at 69–70).

3. *Summary.*—As the plaintiff's deposition testimony conclusively establishes, the result in this case is controlled by the *Rick/Chardon* rule. The plaintiff was given unequivocal notice of the impending termination on November 3 and "the date of notice of termination, rather than the final date of employment, is the operative date

for which the 180-day filing requirement begins to run." *Elliott v. Group Medical and Surgical Service,* 714 F.2d 556, 563 (5th Cir.1983).

### D. PLAINTIFF'S ARGUMENTS.

Following the plaintiff's extensive deposition and the filing of Mercury's motion for summary judgment, the plaintiff filed a two-page affidavit in opposition to summary judgment. By and large, the affidavit is merely a repetition of the allegations made in plaintiff's complaint. From a review of the affidavit, plaintiff can be expected to make the following arguments,[4] all of which are without merit.

■ 1. *Argument That The EEOC Charge Was Mailed Prior to May 31.*—The plaintiff's contention that she mailed her EEOC charge prior to the EEOC's receipt of the charge does not save her charge from the conclusion that it was untimely. As Judge Guin of this Court held in *Burks v. Delta Air Lines,* 32 EPD ¶ 33, 879, 32 FEP 671 (N.D.Ala.1983), "[t]he complaint is 'filed' with the EEOC office when it is officially received by them." Accordingly, the fact that plaintiff mailed the charge on a date prior to May 31 receipt date does not make the mailing date the operative date for the purpose of determining whether a charge has been timely filed.

Moreover, the charge shows on its face that the plaintiff did not execute the charge until May 25, and it could not have been mailed prior to that date. Since May 25 is more than 180 days after plaintiff was given unequivocal notice of her discharge, the charge would still be time-barred even if the earlier date of mailing was the operative date.

■ 2. *Argument That Plaintiff Remained An Employee Until December 3.* —The plaintiff's argument that the time for filing her charge did not begin to run until December 3 because she remained an employee until that date is similarly unavailing. As the Supreme Court stated in *Ricks,* "[m]ere continuity of employment,

without more, is insufficient to prolong the life of a cause of action for employment discrimination." 449 U.S. at 257, 101 S.Ct. at 503. As the present Fifth Circuit recently stated: "*Ricks* and *Chardon* establish that the date of notice of termination, rather than the final date of employment, is the operative date from which the 180 day filing requirement begins to run." *Elliott v. Group Medical and Surgical Service,* 714 F.2d 556, 563 (5th Cir.1983).

An argument identical to that advanced by Ms. Welty was made and rejected in *Lippert v. General Electric Co.,* 28 EPD ¶ 32,559, 27 FEP 1427 (W.D.Ky.1982). There the plaintiff was informed by letter dated February 6, 1979, that he would be placed on lack of work status effective March 9, 1979, which was subsequently extended to June 8, 1979, after which plaintiff had the benefit of three weeks vacation. Thereafter, plaintiff remained on "protected service status" for one year during which he received certain benefits, including the possibility of rehire. His employment terminated as of June 29, 1980. The Court rejected the plaintiff's argument that he remained an employee until expiration of protective service status and that the time for filing a charge did not begin to run until June 29, 1980:

> ... Plaintiff further argues that he remained an "employee" of the defendant until the protected service status expired. We interpret these circumstances to be benefits conferred upon the plaintiff as a result of the initial decision to place him on lack of work status and consequences of that decision. The Supreme Court noted in *Ricks* that "[m]ere continuity of employment without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks,* 101 S.Ct. at p. 504 (Citation omitted). In this case the mere continuity of employee status cannot be said to do more than employment. Further, the possibility of rehire from protected service status cannot be said to extend the limitations peri-

---

**4.** Plaintiff's counsel has not submitted brief and argument in opposition to defendant's motion for summary judgment.

od. "[A]n employee's uncertainty over whether his employer will reinstate him does not alter the date of occurrence of the alleged unlawful act." *Coke v. General Adjustment Bureau*, 616 F.2d 785, 788 (5th Cir.1980).

27 FEP at 1430. So also in this case, the fact that Ms. Welty may have technically remained an employee until December 3 cannot extend the life of her discrimination claim because the charge-filing period began to run on the date she received notice of her discharge.

■ 3. *Argument That Plaintiff Hoped For Reconsideration.*—The plaintiff's argument that she "felt that if [she] did a good job during this [30 day] period, the company might reconsider" likewise cannot save her untimely-filed charge of discrimination. The point is illustrated by *Lawson v. Burlington Industries, Inc.*, 683 F.2d 862, 863 (4th Cir.), *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982), where the plaintiff testified that he delayed filing his EEOC charge "because he hoped to be recalled." Rejecting the plaintiff's contention that the time for filing his charge should be equitably tolled "because of his expectation that he would be recalled to work," the Fourth Circuit Court of Appeals affirmed the District Court's entry of summary judgment:

> The thrust of Lawson's contention is that the filing period should be equitably tolled because he believed Burlington would eventually find a position for him. However, the facts are uncontroverted that Burlington in no way misled Lawson or misrepresented his prospects for future employment. Lawson's optimistic hope that he would be recalled during the 270-day period falls short of demonstrating the "reasonable reliance on the defendant's conduct or representations" necessary to justify equitable tolling in this situation. *See Naton v. Bank of California*, 649 F.2d 691 (9th Cir.1981); *Wagner v. Sperry Univac*, 458 F.Supp. 505 (E.D.Pa.1978), *aff'd mem.* 624 F.2d 1092 (3d Cir.1980).

683 F.2d at 864. As noted above, the notice of discharge given to plaintiff on November 3 was clear and unequivocal. The plaintiff understood immediately that she "was through" and was being discharged. Further, plaintiff did not believe the reasons she was given for her discharge and believed that the real motivation was sex and age. There was nothing said to the plaintiff which could have created any impression whatsoever that the discharge was anything other than final.

■ 4. *Argument That The Discrimination Was Continuing in Nature.*—The plaintiff's argument that her discharge was a continuing violation is unavailing because it is contrary to the settled principle that "[c]ompleted acts such as a termination through discharge … are not acts of a 'continuing' nature." *Corbin v. Pan American World Airways*, 432 F.Supp. 939, 944 (N.D.Cal.1977). *See also Olson v. Rembrandt Printing Co.*, 511 F.2d 1228, 1234 (8th Cir.1975) (*en banc*) ("Termination of employment either through discharge or resignation is not a 'continuing' violation.") The point is illustrated by the case of *Shultz v. Dempster Systems, Inc.*, 561 F.Supp. 1230 (E.D.Tenn.1983), where the plaintiff sought to save his time barred termination claim by arguing that the discrimination was continuing in nature. The argument was squarely rejected:

> Plaintiff has argued that this is a case of continuing discrimination and that the limitations period should begin at some time later than his termination. *See Roberts v. North American Rockwell Corp.*, 650 F.2d 823 (6th Cir.1981). This continuing violation doctrine is applied where there is an ongoing practice of unlawful discrimination. It prevents an employment discrimination suit from being time-barred simply because an employer's first act of discrimination occurred before the limitations period. Although plaintiff alleged that defendant engaged in continuing discrimination, plaintiff has been unable to point to any act of continuing discrimination. The January 23, 1981 termination was permanent and final. . . .

561 F.Supp. at 1232. So also Ms. Welty's discharge on November 3 was clear and

final. As the Fourth Circuit has stated, "an employer's failure to recall or rehire does not constitute a continuing violation...." *Lawson v. Burlington Industries,* 683 F.2d 862, 864 (4th Cir.), *cert. denied,* 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). Accordingly, plaintiff's argument that her discharge was a continuing violation because she was not rehired is patently frivolous.

■ 5. *Reliance On The EEOC Advice.* —Finally, plaintiff's affidavit suggests the argument that her untimely filing should be excused because she "was informed by people at the office of the EEOC in Birmingham that [she] should file [her] charge within 120 days after December 3, 1982." She further states that she had "never filed an EEOC charge before so [she] relied on the EEOC to give [her] the proper advice." By this argument, plaintiff would have the Court conclude that the time for filing her charge was equitably tolled by reason of the EEOC's advice. This equitable tolling argument is due to be rejected for the following reasons:

First, the "[c]ourts have taken a uniformly narrow view of equitable exceptions to ... limitations periods." *Earnhardt v. Commonwealth of Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982). As the Supreme Court recently admonished in *Baldwin County Welcome Center v. Brown,* —— U.S. ——, 104 S.Ct. 1723, 80 L.Ed.2d 196, 34 FEP 929 (1984),

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants. As we stated in *Mohasco Corp. v. Silver,* 447 U.S. 807, 826 [100 S.Ct. 2486, 2497, 65 L.Ed.2d 532] (1980), "[I]n the long run experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law."

The plaintiff in this case has fallen far short of making a showing of compelling circumstances which would justify excusing the plaintiff from complying with the procedural requirements of Title VII and the ADEA.

Second, even if it is assumed that the "advice" was received, the allegation would not save her untimely charge because she did not follow the EEOC's "advice" and file the charge "within 120 days after December 3, 1982." The 120th day following December 3, 1982, was April 2, 1983. Since plaintiff did not file her EEOC charge until May 31, 1983, she obviously did not follow the EEOC's advice. Had she done so, her charge would not have been untimely. Accordingly, under no view of the facts can plaintiff rely on the EEOC's advice to excuse her untimely filing.

Third, even if plaintiff could seriously argue that she had been misinformed by the EEOC, the argument would be unavailing in light of the fact that she was represented by counsel prior to her contact with the EEOC, and the cases have consistently held that the doctrine of equitable tolling is inapplicable where a plaintiff is represented by counsel. This principle was expressed by the former Fifth Circuit in *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.,* 515 F.2d 1195 (5th Cir.1975),[5] in the following terms:

> We feel constrained to note that, even if the 180 day period could be waived, this is a singularly inappropriate situation for such a remedy, in view of the fact that Edwards consulted an attorney long before the 180 day period ran. In such a circumstance, he had the "means of knowledge" of his ADEA rights, for the very purpose of consulting an attorney is to ascertain what legal redress arises out of a factual situation encompassing a supposed wrong. While it may be inequitable to allow an employer to benefit from his own wrong, it would be at least equally unfair to then hold that the employer is estopped from raising the 180 day bar where the injured em-

---

**5.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

ployee consulted an attorney who either slept on his client's rights or did not believe he had any under the statute. 515 F.2d at 1200 n. 8. The principle has been applied in numerous cases, as illustrated by the following:

—In *Comfort v. Rensselaer Polytechnic Institute*, 575 F.Supp. 258 (N.D.N.Y.1983), the plaintiff argued that she should be equitably relieved of the filing requirement by reason of her employer's alleged failure to post the statutory ADEA notices. The District Court granted defendant's motion for summary judgment since plaintiff's retention of counsel prior to expiration of the filing period precluded application of equitable tolling:

> [P]laintiff was represented by counsel at the time she filed with the New York State Division of Human Rights and may not now claim ignorance of the filing requirements and take advantage of her failure to file. *Smith v. American President Lines, Ltd.*, 571 F.2d 102 (2d Cir. 1978). *See also Keyse v. California Texas Oil Corp.*, 590 F.2d 45 (2d Cir.1978).
>
> \* \* \* \* \* \*
>
> [T]he court believes that in the present case summary judgment is appropriate due to plaintiff's engagement of counsel prior to expiration of the filing deadline. In such a situation the court finds that the equitable principles discussed above should not come into play....

575 F.Supp. at 260–61.

—In *Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170 (D.Mass.), *aff'd*, 720 F.2d 658 (1st Cir.1983), the plaintiffs contended that the equitable tolling doctrine was applicable as a result of misrepresentations by the Department of Labor and the EEOC. Among the plaintiff's contentions was that the EEOC had represented that there was "no problem" with the statute of limitations. 558 F.Supp. at 1173. Rejecting the tolling argument because plaintiffs had been represented by counsel, the District Court granted defendant's motion for summary judgment:

> "The courts have repeatedly held that equitable tolling is inappropriate when the plaintiff has consulted counsel during

the statutory limitation period." *Needham v. Beecham, Inc.*, 515 F.Supp. 460, 467 (D.Me.1981) (ADEA). *See, e.g., Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir.1978) (per curiam) (Title VII); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975) (ADEA); *Sanders v. Duke University*, 538 F.Supp. 1143, 1146 n. 2 (M.D.N.C. 1982) (ADEA). "Counsel are presumptively aware of whatever legal recourse may be available to their client." *Downie v. Electric Boat Div.*, 504 F.Supp. 1082, 1087 (D.Conn.1980) (ADEA), and "constructive knowledge" of the law's requirements is thereby imputed to an ADEA claimant. *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. at 646. In the present case, therefore, equitable modification of the limitations period would be inappropriate notwithstanding the apparent absence of prejudice to defendant.

558 F.Supp. at 1174.

—In *Sanders v. Duke University*, 538 F.Supp. 1143 (M.D.N.C.1982), the Court refused to apply the doctrine of equitable tolling, noting that the doctrine was inapplicable where plaintiff was represented by counsel:

> It should also be noted that courts have refused to modify the 180-day requirement for plaintiffs who were represented by counsel during the filing period. *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975); *Downie v. Electric Boat Division*, 504 F.Supp. 1082, 1086 (D.Conn.1980). In this case it is undisputed that the plaintiff has been represented by counsel since November 1979, a full year before he filed his EEOC charge.

538 F.Supp. 1146, n. 2.

—In *Needham v. Beecham, Inc.*, 515 F.Supp. 460 (D.Maine 1981), plaintiff sought benefit of the doctrine of equitable tolling based on the allegation that he had been misled by a Department of Labor Compliance officer. The doctrine was held

to be inapplicable since plaintiff had retained counsel:

> [T]he record shows that plaintiff consulted one of his present attorneys regarding his termination by defendant in the summer of 1974, well within the three-year and 300-day ADEA limitations periods following his termination. The courts have repeatedly held that equitable tolling is inappropriate when the plaintiff has consulted counsel during the statutory limitation period. *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir.1978) (per curiam); *Smith v. American President Lines, Ltd.*, 571 F.2d 102, 109-10 (2d Cir.1978); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975). Once a claimant consults an attorney, he has "access to a means of acquiring knowledge of his rights and responsibilities," *Smith v. American President Lines, Ltd., supra* at 109; "the very purpose of consulting an attorney is to ascertain what legal redress arises out of a factual situation encompassing a supposed wrong," *Edwards v. Kaiser Aluminum & Chemical Sales, Inc., supra.*

515 F.Supp. at 467-68.

—In *Downie v. Electric Boat Division*, 504 F.Supp. 1082 (D.Conn.1980), the District Court granted defendant's motion for summary judgment, concluding that equitable tolling could not be applied since plaintiff was represented by counsel during the filing period.

> The final factor extant in this case, on the issue of equitable tolling, deals with representation by counsel. The guiding principle on this point was expressed by the Second Circuit in *Smith v. American President Lines, Ltd.*, 571 F.2d 102 (2d Cir.1978). Tolling is inappropriate when the plaintiff is represented by counsel during the statutory filing period. When one has retained counsel within the period in question, he has "access to a means of acquiring knowledge of his rights and responsibilities ..." Id. at 109. *See Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir.1978); *Kephart v. Institute of Gas Technology*, 581 F.2d 1287, 1289 (7th Cir.1978).

504 F.Supp. at 1086. In concluding that plaintiff's claims were time barred, the Court rejected plaintiff's related argument that equitable tolling could nevertheless be applicable because his counsel "never informed Plaintiff of any of his ADEA rights":

> This defense is without merit. Counsel are presumptively aware of whatever legal recourse may be available to their client. The client cannot avoid responsibility for the actions, or omissions, of his attorney. " 'Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely-selected agent. Any other motion would be wholly inconsistent with our system of representative litigation.' " *Albano v. General Adjustment Bureau*, 478 F.Supp. 1209, 1215 (S.D.N.Y.1979) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34, 82 S.Ct. 1386, 1391-92, 8 L.Ed.2d 734 (1962)), *aff'd*, 622 F.2d 572 (2d Cir.1980).

504 F.Supp. at 1087.

—In *Otstott v. Verex Assurance, Inc.*, 481 F.Supp. 1269 (N.D.Tex., 1980), the plaintiff argued that misadvice from the EEOC justified application of the equitable tolling principle to excuse his failure to make a timely filing with the EEOC. The principle was held to be inapplicable by reason of plaintiff's contact with counsel during the filing period and his complaint was dismissed:

> Assuming *arguendo* that the misadvice of the Kansas City EEOC office meets the third Chappell criterion for equitable tolling of the filing period, it does not serve to explain the entire delay from April, 1978, to February, 1979. The record reflects that plaintiff contacted an attorney on or before June 8, 1978, regarding his claim. Even if the statute is considered to be tolled from plaintiff's first contact with the EEOC office until that date, there is no reasonable ground for the failure of plaintiff or his attorney to file a complaint within six months of that date. Part of plaintiff's Kansas City attorney's responsibility in handling

plaintiff's case was his obligation to ensure within a reasonable time that all required procedural steps had been taken. For one reason or another, this was not done.

481 F.Supp. at 1271.

—In *Bennett v. Russ Berrie & Co.,* 564 F.Supp. 1576 (N.D.Ind.1983), the District Court granted the defendant's motion for summary judgment based on the plaintiff's failure to file a timely charge with the EEOC. The principle of equitable tolling was inapplicable since plaintiff had been represented by counsel:

> In this case, the plaintiff has not alleged any facts which would establish an equitable basis for tolling the period for filing a charge. Nor could any such claim be made in light of the fact that plaintiff has been represented by counsel since shortly after her discharge.

564 F.Supp. at 1580–81.

Applying the principle established by the foregoing cases, it is clear that plaintiff cannot successfully rely on the doctrine of equitable tolling to save her untimely charge, since she was represented by counsel long *before* the expiration of the statutory filing period and *before* she contacted the EEOC for the first time. As plaintiff's deposition testimony reveals, she contacted counsel on March 2, 1983, and the 180-day charge filing period did not expire until May 2, 1983.

As suggested in *Downie, supra,* the fact that her attorney may not have properly advised her with respect to the filing requirements does not justify tolling of the limitations period.[6] This point was made in *Maira v. Hooker Chemical Co.,* 26 EPD ¶ 32,115, 26 FEP 254 (W.D.N.Y.1981), where the plaintiff contended that the limitations period should be equitably tolled because "his attorney erroneously believed, and so informed the plaintiff, that as a prerequisite to commencing ... suit plaintiff was required not simply to commence his state remedies but to pursue them to a conclusion...." 26 FEP at 255. The

Court held that equitable tolling was not available and defendant's motion for summary judgment was granted:

> This requires me to determine whether plaintiff's attorney's ignorance of the law and misinformation of his client may toll the statute. I have concluded that it may not. I bear in mind that the ADEA is a remedial statute whose procedural requirements must be liberally construed. However, in the closely analogous context of the procedural requisites to bringing a Title VII action, the United States Court of Appeals for the Second Circuit has held that failures of a claimant's attorney will not toll the running of the time periods. *Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47–48, 18 FEP Cases 1397 (1978); *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109–110, 16 FEP Cases 712 (1978). In a case very similar to that at bar, Judge Clarie has interpreted these cases to bar equitable tolling of the 180-day and 300-day notice periods of 29 U.S.C. § 626(d). *Downie v. Electric Boat Division,* 504 F.Supp. 1082, 1086–87, 24 FEP Cases 1144 (D.Conn.1980). Plaintiff, so far as the record shows, freely selected his counsel; plaintiff's argument would permit him effectively to disavow the acts and omissions of this freely-selected agent. This would be wholly inconsistent with a system of representative litigation. *Downie v. Electric Boat Division, supra; Albano v. General Adjustment Bureau,* 478 F.Supp. 1209, 1215, 21 FEP Cases 323 (S.D.N.Y.1979) (quoting *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–34 (1962)), aff'd, 622 F.2d 572, 22 FEP Cases 840 (2d Cir.1980). Plaintiff must bear the consequences of his attorney's behavior.

26 FEP at 256.

Similarly persuasive is the case of *Albano v. General Adjustment Bureau,* 478 F.Supp. 1209 (S.D.N.Y.1979), *aff'd,* 622

---

**6.** Plaintiff subsequently changed counsel. Her present lawyers were not involved in her initial representation.

F.2d 572 (1st Cir.1980), where the plaintiff sought to excuse her failure to file a charge with the state deferral agency on the grounds that her former attorney had told her that a charge had been filed. Such circumstances were held not to justify plaintiff's failure to file and defendant's motion for summary judgment was granted:

> Attempting to avoid the consequences of the situation, the plaintiff asserts that she attempted to comply with all of the procedural requirements of section 706(c) and that whatever irregularities may exist are the result of omissions and misstatements by her former attorney. While this may be so, and while the Court has no reason to believe that the plaintiff has attempted to be anything but truthful in stating that recourse to state administrative proceedings was to be made, she cannot in this manner avoid responsibility for the actions of her attorney. The situation here is similar to that in *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34 [82 S.Ct. 1386, 1390, 8 L.Ed.2d 734] (1962), where the Supreme Court noted: "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation...." Accord, *Davis v. United Fruit Co.*, 402 F.2d 328, 331 (2d Cir. 1968), *cert. denied*, 393 U.S. 1085 [89 S.Ct. 869, 21 L.Ed.2d 778] (1969).

478 F.Supp. at 1215.

Fourth, equitable tolling would be particularly inappropriate in this case where the plaintiff was familiar with EEOC procedures as a result of her extensive personnel responsibilities and EEO experience. On point is the Court's decision in *Woodard v. Western Union Telegraph Co.*, 650 F.2d 592 (5th Cir. Unit B 1981). There, the plaintiff sought to excuse his failure to file a written notice of intent to sue by blaming the failure on Department of Labor officials who advised him to " 'go along with them and remain quiet and they would run the whole thing through.' " The Court af-

firmed the District Court's entry of summary judgment, concluding that the plaintiff's assertions were insufficient to invoke equitable tolling, "especially when the record shows that the appellant was familiar with the age discrimination laws." 650 F.2d at 595.

Also instructive is *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5th Cir.1975), where the plaintiff, a former manager of defendant's South Florida Sales Office, argued that compliance with the notice of intent to sue requirement should be excused. The Court declined to accept the argument with the observation that "Mr. Edwards cannot be considered an unsophisticated person," and in any event his consultation with an attorney "more than made up for whatever sophistication he arguably lacked." 515 F.2d at 1200.

So also in this case it would be strange indeed if equitable considerations were to excuse Ms. Welty from compliance with the requirement of a timely charge of discrimination. The plaintiff had been involved in EEO personnel responsibilities since her participation in a Management Training Program with Bendix Corporation in Florida in the early 1970's. (See Plaintiff's deposition, at 25–29). As Bendix Corporation's Business Manager in Huntsville from 1976 through 1980, plaintiff's responsibilities included all areas of personnel management, including labor relations. At Bendix, Ms. Welty "wrote the affirmative action plans and implemented and monitored all the affirmative action policies and guidelines," and did "all the investigation" of EEOC charges. (Plaintiff's deposition, at 37). Ms. Welty's personnel responsibilities at Mercury were the same as those she had at Bendix, with the exception that she did not have labor relations responsibilities. (Plaintiff's deposition, at 53).

Aside from the fact that she had the benefit of legal counsel, Ms. Welty's high-level management position, her experience in EEO matters, and her familiarity with the EEOC precludes any contention that she was "unsophisticated" with respect to

such matters and is therefore excused from compliance with the requirement of a timely EEOC filing.

## CONCLUSION

The result in this case is controlled by the Supreme Court's decisions in *Ricks* and *Chardon*. Because the plaintiff was notified of her discharge on or about November 3, 1982, and because she failed to file an EEOC charge until May 31, 1983, 209 days later, plaintiff failed to comply with the requirements of Title VII and the ADEA that a charge of discrimination be filed with the EEOC within 180 days after the alleged unlawful employment practice. Accordingly, Mercury's motion for summary judgment is due to be granted. An appropriate order will be entered.[7]

## ORDER

In conformity with Memorandum of Decision entered contemporaneously herein, it is

ORDERED, ADJUDGED and DECREED that the motion of defendant Mercury Consolidated, Inc. ("Mercury") for summary judgment in its favor based on failure of plaintiff Madelyn Welty to comply with the statutory requirements of Title VII and the Age Discrimination in Employment Act ("ADEA") of filing a charge of discrimination with the Equal Employment Opportunity Commission within 180 days of the alleged unlawful employment practice is hereby GRANTED and ENTERED, the Court hereby making express determination that there is no genuine issue as to any material fact, that defendant is entitled to judgment in its favor as a matter of law with respect to plaintiff's Title VII and ADEA claims, and that there is no just cause or reason for delay in entry of final judgment in favor of defendant. And it is further

ORDERED, ADJUDGED and DECREED that plaintiff Madelyn Welty have and recover NOTHING of defendant Mercury Consolidated, Inc. and that the costs herein are taxed against plaintiff, for which let execution issue.

---

**7.** The Court acknowledges that this Memorandum of Decision is the product of a very slight reworking of the excellent and scholarly brief submitted by counsel of record for defendant Mercury in support of its motion for summary judgment. The Court is fully persuaded that defendant's brief and hence this Memorandum of Decision contains a full and complete recitation of all material facts (undisputed) relevant to the issue presented, together with a correct statement of the law applicable to such facts with supporting citations. In the opinion of the Court publication is dictated for two reasons. First, publication with this footnote will serve as well deserved recognition to defendant's able counsel for their accomplishment of a legal task extremely well done. Secondly, publication will be of substantial benefit to the federal bench and bar.