Kathleen C. BLANCHARD

v.

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION.**

Civ. A. No. 87–4567.

United States District Court, E.D. Louisiana.

Jan. 25, 1989.

J. Courtney Wilson, New Orleans, La., for plaintiff.

Peter J. Butler, Butler, Heebe & Hirsch, New Orleans, La., for defendant.

## MEMORANDUM OPINION

MENTZ, District Judge.

### JURISDICTION

This is a suit for damages for retaliatory discharge and this Court has subject matter jurisdiction under 42 U.S.C. § 2000e et seq.

### FINDINGS OF FACT

First Federal Savings and Loan employed plaintiff in January 1969 as a teller. She was first promoted to head teller and then promoted to manager of the West Park Branch, a limited service branch at Houma, Louisiana.

#### *Exhibits*

On October 1, 1981 plaintiff wrote Mr. Berthelot, First Vice President of defendant, asking that her salary be re-evaluated "as men in the same position that I am holding are making more money than I am." (Pltf.Ex. 2). On January 15, 1982, she filed a formal charge with the Equal Employment Opportunity Commission (EEOC), alleging that John Haslett, Branch Manager at Lynn Park Office (another lim-

ited service branch) was paid $150.00 per month more than she, although he became a branch manager a year after she became such. (Pltf.Ex. 4). She also complained that after writing her letter to Mr. Berthelot, she had been given a poor job evaluation. On January 26, 1983, the EEOC declined to process further either the Title VII or the Equal Pay Act complaints (Pltf.Ex. 17). About this time, First Federal began annual job evaluations in written form, and the first of these (Pltf.Ex. 10) dated December 23, 1981 reflected that she was doing an average job and recommended an average salary increase. The report notes that "she is sometimes too critical of company policy and decisions" and that she should "improve her attitude." The second report (Pltf.Ex. 14A) dated December 23, 1982 recommended a maximum increase in salary, noted her "definitely above average," and that "her attitude and criticism of company policy has improved considerably." Mr. Haslett, the manager of defendant's other limited service branch also was noted definitely above average and recommended for a maximum salary increase. Though recommended, no increase was given to plaintiff.

Several exhibits reveal various constructive suggestions made by plaintiff. Plaintiff Exhibit 18 is a memo prepared by plaintiff on handling share loan payments, which was distributed to the various branches on July 26, 1983. It is marked "Thanks—Jan Sevin." Exhibit 19 is a suggestion by plaintiff on use of closed account cards. Exhibit 25 is a suggestion by plaintiff to "Branch Operations Committee on Lock-out Flag Recommendation Sheets."[1] But even though the West Park Branch led other branches in savings in 1983,[2] her 1984 evaluation was "belligerent attitude"—average job, performance and no salary increase. Exhibit 41 is a letter from plaintiff explaining a computer problem. This was circulated by Jan Sevin on January 25, 1985. Plaintiff's March 1985 evaluation showed "attitude lacking with

respect to management," although it noted "comes up with ideas to improve processing." No salary increase was given, and plaintiff was placed on probation by Mr. Templet on April 16, 1985, for approximately three months. After placing her on probation, Mr. Templet visited her branch and found her attitude had improved considerably. He took her off probation on July 24, 1985.

Then on September 10, 1985, plaintiff again wrote Mr. Berthelot, inquiring about the raise discussed in April, 1985. Again, her request for a raise was denied.

We note that the evaluation of Beverly Dupre, former Assistant Vice–President, dated November 6, 1985 showed "lack of respect for chain of command" and "undermines supervisor." In contrast to Ms. Blanchard, Ms. Dupre received a $100 monthly raise in addition to her $3,000 per month salary as branch manager (Pltf.Ex. 50). Ms. Dupre's rating was "doing an average job."

Ray Domangue, Comptroller at Thibodaux, received an evaluation on August 14, 1984, as "doing an average job." His $2,155 per month salary was raised $100 per month (Pltf.Ex. 53). Another monthly raise of $100 per month was approved July 22, 1985 for an "average job." Then on January 27, 1986 (Pltf.Ex. 52A), he was put on probation for having a hostile, angry and non-supportive attitude over the years.

Plaintiff received her 1985 evaluation on February 21, 1986, which recommended "termination with two weeks pay." Ms. Blanchard was terminated from First Federal on March 10, 1986. In contrast, Ray Domangue was fired on April 18, 1986, but to be carried on payroll until July 31, 1986 (Pltf.Ex. 55).

*Testimony*

Plaintiff began working for First Federal in 1969 as a teller, was promoted to head teller in the Thibodaux office, then promot-

---

1. The Court notes Pltf.Ex. 20, a letter to Jan Sevin, lists a number of what appear to be legitimate criticisms on several computer problems. This letter is dated September 8, 1983 and presumably was included in the evaluation of 1983.

2. See Deft.Ex. 38.

ed to branch manager of the West Park Branch at Houma. She filed a complaint with the EEOC in 1981, alleging that the branch manager of the Lynn Park office in Houma was paid more than she, even though he became a branch manager a year after she was appointed. Both West Park and Lynn Park are similar offices, limited service branches. After investigation, the EEOC did not proceed further, but gave plaintiff the usual "right to sue" letter. She did not file suit, and the present matter comes before the Court on the alleged "Retaliatory Discharge" of March, 1986.

When the 1981 letter was written, First Federal had 50–60 employees. At present, First Federal has seven branches and 120–130 employees. After the written evaluations began in 1982, Mrs. Blanchard was consistently described as having an "abrasive personality," with a negative, hostile, belligerent and non-supportive attitude. Various officers of First Federal testified: Ed Deramee, attorney; Fallon Weldon, past President; Wayne Riche, Branch Coordinator, Mike Templet, Chief Financial Officer; and Janice Sevin, Vice President. None of these could give specific instances to demonstrate the alleged "hostile" attitude.

As to specific complaints, Mr. Wayne Riche commented that plaintiff was at one time offering pots of African violets for sale at the West Park Branch. Mr. Templet's only specific complaint referred to her requesting a change of the branch's savings goal from $180,000 to $100,000. However, First Federal had no book of company policies, and these instances are not related to attitude.

There were three "conversions" during plaintiff's tenure at First Federal, the last being for banking practices in December 1985. There is some suggestion that plaintiff failed to understand these procedures and that a large number of errors took place at the West Park Branch. However, Mr. Templet stated that the December 1985 conversion was not an issue, and Regina Hebert's testimony does not fix the report of alleged proof-error mistakes before or after the decision to fire plaintiff. Mr. Evans, who was responsible for the 1985 conversion, stated that he did not have any documents to corroborate errors at West Park. Mr. Berthelot, the President, admitted "there will never be a conversion without problems," and stated that plaintiff's attitude was the most damaging, and that this offset the fact that West Park had the largest savings gain in 1983.

These facts reveal that the employee-plaintiff worked herself up from teller to head teller and then to branch manager over the period 1969–1981, with periodic raises during this period. After her protest to the EEOC in 1981 she never received another promotion or raise, even though she was recommended for a maximum salary increase in December 1982.

## CONCLUSIONS OF LAW

### I.

▮▮ Relief under Title VII is dependent upon filing a charge of discrimination "within one hundred and eighty days after the alleged unlawful employment practice occurred...." 42 U.S.C. § 2000e–5(e). In a retaliatory discharge case, the one hundred and eighty day time period commences when the employee is notified by the employer of the impending discharge. *Welty v. S.F. & G., Inc.*, 605 F.Supp. 1548, 1557 (N.D.Ala.1985). Ms. Blanchard was informed of her discharge on February 21, 1986. On July 2, 1986, one hundred thirty-one days later, she filed a charge of discrimination with the EEOC, alleging that her termination was motivated by "retaliation." Since Ms. Blanchard filed a timely administrative charge, her claim for retaliatory discharge is not time-barred.

### II.

The Fifth Circuit outlined the burden of proof required for "retaliatory discharge" in *McDaniel v. Temple Independent School District,* 770 F.2d 1340 (1985), as follows:

The law to be applied in a retaliatory discharge case is also well established. *See Jack v. Texaco Research Center,* 743

F.2d 1129 (5th Cir.1984); *McMillan v. Rust College, Inc.*, 710 F.2d 1112 (5th Cir.1983). Section 704(a) of Title VII expressly prohibits retaliatory conduct; it provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge" under Title VII. 42 U.S.C. § 2000e–3(a). To prove a violation of section 704(a), "the plaintiff must first establish a prima facie case of retaliation by showing (1) that she engaged in an activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision." *McMillan*, 710 F.2d at 1116. Similar to the evidentiary burdens in the discriminatory treatment context, if the plaintiff establishes a prima facie case of retaliation, the employer has the burden of producing some legitimate nondiscriminatory reason for the adverse employment decision and, if the employer satisfies this burden, the plaintiff must prove that the proferred reason is pretext for retaliation. *Id.*

In a retaliation case, however, the ultimate determination required for the plaintiff to succeed is different from a disparate treatment case. The ultimate determination is whether or not retaliation for filing a charge under Title VII was a "but for" cause of the adverse employment decision. As stated in *Jack*, "[w]hether or not there were other reasons for the employer's action, the employee will prevail only by proving that 'but for' the protected activity she would not have been subjected to the action of which she claims. If the employee does not bear that burden of persuasion, she may not prevail." 743 F.2d 1131 (citations omitted).

*Id.* at 1346.

### III.

It is uncontested that the charge of discrimination filed by plaintiff in January of 1982 is an activity which is protected by Title VII. It is also uncontested that plaintiff's termination in March, 1986 was an "adverse employment action." Thus, the sole issue to be addressed by the Court is whether there is a causal connection between plaintiff's termination and her filing the charge of discrimination with the EEOC.

### IV.

■ The Court finds that First Federal terminated plaintiff because she filed a charge of discrimination with the EEOC. The evidence demonstrates a discriminatory pattern of conduct toward the plaintiff following her complaint to the EEOC, which First Federal has failed to explain, except by various conclusionary language, such as "hostile," "belligerent," "negative," or "non-supportive." First Federal was unable to document or substantiate these allegations by specific instances. As is stated in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207 (1981), "[t]he defendant's explanation of its legitimate reasons must be clear and reasonably specific." In the present matter, plaintiff established a prima facie case which was not rebutted by facts, but rather by vague and conclusionary allegations as to attitude. Because defendant failed to enunciate clear and specific justification for the discharge, plaintiff's burden of persuasion has been met. She has satisfied the "but for" rule. *See Jack v. Texaco Research Center*, 743 F.2d 1129, 1131 (5th Cir.1984).

### V.

It is apparent to the Court that over the years Ms. Blanchard's favorable attitude towards management was slowly converted into a loss of faith that she would receive fair treatment. Eventually, her attitude became characterized by a sense of victimization and persecution. She tried to be a part of the organization and contributed a number of valuable memoranda and constructive suggestions. And, on the occasion of her annual evaluations, Ms. Blanchard always asked what she could do to earn a raise. But she was always confronted with the management's attitude that she

was hostile and belligerent. The Court notes again that First Federal was not able to point out specific instances on which the negative evaluations were based. The defendant's discriminatory pattern of conduct persisted during the entire four and one-half years between the date of her EEOC letter and her date of discharge. An example was the December 1982 evaluation, which rated her definitely above average and recommended a maximum increase in salary, which was denied by management. Given the circumstances to which plaintiff was subjected, her attitude was a reflection in a large part of the treatment she received.

### VI.

The Court will award in damages the difference in Ms. Blanchard's salary from the date of discharge to the present date, plus all costs, interest from date of judgment until paid, and reasonable attorney's fees. Counsel for plaintiff is directed to submit an itemized time and expense chart in accordance with Local Rule 21.16. If the parties cannot agree on the amount of the attorney's fees, a hearing will be held before the Magistrate to fix same in accordance with *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.1974). The Court notes that Ms. Blanchard had participated in a medical and hospital plan, but no evidence was put in the record to establish the amount of this loss. Accordingly, the Court will not award plaintiff lost benefits.

### VII.

Judgment will be rendered for plaintiff and against defendant. The parties are directed to submit proposed forms of judgment with suggested itemization of damages within ten days.